**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE ESTATE OF RICHARD BARD and DANA GERMAN-BUNTON, as administrator *ad-prosequendum* of THE ESTATE OF RICHARD BARD, | 1:17-cv-01452-NLH-AMD |
| Plaintiffs, | **OPINION** |
| v. | |
| THE CITY OF VINELAND, CHIEF RUDY BEU, FORMER CHIEF TIMOTHY CODISPOTI, and JOHN DOE POLICE OFFICERS 1-10, | |
| Defendants. | |

<u>**APPEARANCES**</u>:

CONRAD J. BENEDETTO
MELISSA YVETTE HOFFMAN
LAW OFFICES OF CONRAD J. BENEDETTO
1233 HADDONFIELD-BERLIN ROAD
SUITE 1
VOORHEES, NJ 08043
    On behalf of Plaintiffs

A. MICHAEL BARKER
TODD J. GELFAND
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221
    On behalf of Defendants

<u>**HILLMAN**</u>**, District Judge**

    This matter concerns claims by Plaintiff arising out of the

shooting death of her son by Defendant City of Vineland police

officers.  Presently before the Court is the motion of
Defendants to dismiss Plaintiff's claims.  For the reasons
expressed below, Defendants' motion will be granted in part and
denied in part.

## <u>BACKGROUND</u>

Plaintiff, Dana German-Bunton, the mother of Richard Bard,
the decedent, and the administratrix of her son's estate, filed
a seven-count complaint against the City of Vineland, its
current police chief, Rudy Beu, its former police chief, Timothy
Codispoti, and unnamed police officers involved in the shooting.
Plaintiff claims that the police officers violated Bard's right
to be free from the use of excessive force, and the City of
Vineland and the police chiefs maintained a policy or custom
that fostered the police officers' use of excessive force, or
the City and police chiefs failed to properly train its officer
on the appropriate use of force, all in violation of the Fourth
Amendment of the U.S. Constitution and New Jersey Civil Rights
Act, N.J.S.A. 10:6-2(c).  Plaintiff has also lodged claims for
wrongful death and negligence against Defendants.

The sum of the factual allegations in Plaintiff's amended
complaint are as follows:

> 20. At the time of his death on April 17, 2016, Richard
> Bard was thirty-one (31) years old.
>
> 21. Richard Bard had been involved in a motor vehicle
> accident on January 13, 2013 wherein he sustained serious

injuries to his legs. Bard's injuries from the accident
included an opened fractured femur, a closed fractured
femur, rib contusions, a pulmonary contusion and
pneumothorax, for which the decedent had numerous
surgeries.

22. Upon information and belief, based on his existing
injuries, it was not possible for Bard to walk and even
less, run.

23. On April 16, 2016, decedent Richard Bard and his
girlfriend Ebony Bonner attended a birthday party at a
friend's home located at the Walnut Villa Complex on
Florence Avenue in Vineland, New Jersey.

24. At around 11:30 p.m., Richard Bard and an individual
named Jonathan Bain agreed to leave the party and walk
together to get cigarettes from another resident at the
Walnut Villa Complex.

25. It is alleged by the Vineland police that around 1 a.m.
on April 17, 2016, Richard Bard and Jonathon Bain were
involved in a robbery of an individual near Seventh and
Cherry Streets in Vineland.

26. It is further alleged that Richard Bard and Jonathon
Bain fled and were chased by the police.

27. A responding officer, who has remained unnamed, shot
Richard Bard four times before Bard fell to the ground near
East Avenue and Almond Street in Vineland.  Of the four
shots, two struck the decedent.

28. After the shooting, EMS were called. When EMS arrived,
Bard was found unconscious laying on the side of road in a
pool of blood.  He had sustained two gunshot wounds,
including one gunshot wound to his groin and one gunshot
wound to his hip.

29. Bard was pronounced dead at Inspira Hospital by Dr.
William Martin at 2:05 a.m., on April 17, 2016.

30. After the shooting, family members of Richard Bard were
advised that he sustained two broken wrists. No explanation
was provided for how his wrists had been broken.

(Docket No. 8 at 4-5.)

3

Defendants have moved to dismiss all counts in Plaintiff's complaint, arguing that the complaint only contains conclusory, bare-bones allegations relating to the liability of the officers, police chiefs, and City for Bard's death. Defendants have also moved to dismiss Plaintiff's complaint for her failure to comply with the New Jersey Tort Claims Act. Plaintiff has opposed Defendants' motion.

## DISCUSSION

### A. Subject matter jurisdiction

This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution, as well as violations of New Jersey state law. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343 and 1367.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has

5

instructed a two-part analysis in reviewing a complaint under

Rule 12(b)(6).  First, the factual and legal elements of a claim

should be separated; a district court must accept all of the

complaint's well-pleaded facts as true, but may disregard any

legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129

S. Ct. at 1950).  Second, a district court must then determine

whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "'plausible claim for relief.'"

Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do

more than allege the plaintiff's entitlement to relief.  Id.;

see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d

Cir. 2008) (stating that the "Supreme Court's Twombly

formulation of the pleading standard can be summed up thus:

'stating . . . a claim requires a complaint with enough factual

matter (taken as true) to suggest' the required element.  This

'does not impose a probability requirement at the pleading

stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of'

the necessary element").  A court need not credit either "bald

assertions" or "legal conclusions" in a complaint when deciding

a motion to dismiss.  In re Burlington Coat Factory Sec. Litig.,

114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the

burden of showing that no claim has been presented.  Hedges v.

U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,

6

Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only

consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of judicial notice.

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,

181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,

however, "an undisputedly authentic document that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document."  Pension Benefit Guar. Corp.

v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993).  If any other matters outside the pleadings are presented

to the court, and the court does not exclude those matters, a

Rule 12(b)(6) motion will be treated as a summary judgment

motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**C.    Analysis**

> **1.    Plaintiff's constitutional and NJCRA violation claims against the City of Vineland, Codispoti and Beu[1]**

Defendants argue that Plaintiff's constitutional violation

---

[1] Because the New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions, the NJCRA is interpreted analogously to § 1983.  See Norman v. Haddon Township, 2017 WL 2812876, at *4 (D.N.J. 2017).  Thus, Plaintiff's NJCRA violation claims will proceed or fail for the same reasons as Plaintiff's § 1983 claims.

claims fail because they do not satisfy the Twombly/Iqbal standard.  The Court agrees.

Under Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).  "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  A policymaker is a person who is "responsible for establishing final government policy respecting" the activity in question and "whether an official had final policymaking authority is a question of state law."

Id.

A § 1983 claim based on the policymaker's failure to train or supervise employees "must amount to 'deliberate indifference to the rights of persons with whom the [untrained or unsupervised employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61.

Under New Jersey law, the chief of police is the relevant policymaker for a municipal police department. See Hernandez v. Bor. Of Palisades Park Police Dept., 58 F. App'x 909, 913 (3d Cir. 2003) (citing N.J.S.A. 40A:14-118). Thus, in order to properly plead a claim against the City of Vineland and the police chiefs individually, Plaintiff must plead facts showing that (1) Chief Codispoti or Chief Beu (2) had notice and (3) "consciously disregarded an obvious risk that the officer[s] would subsequently inflict a particular constitutional injury," and (4) this deliberate indifference caused the officers' to use excessive force on Bard. Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 411 (1997); Connick, 563 U.S. at

58-62.

Plaintiff has failed to plead such facts with the level of specificity required by Twombly/Iqbal. With regard to Plaintiff's claims against the police chiefs and the City of Vineland collectively, Plaintiff alleges that: "the City of Vineland, by and through former Chief Timothy Codispoti, Chief Rudy Beu and other policymakers, developed policies and/or customs which led to Richard Bard's death and the violation of his federal constitutional rights"; those policies "were inherently deficient and resulted in the death of Richard Bard"; and the City of Vineland, by and through former Chief Timothy Codispoti, Chief Rudy Beu, and other policymakers acted "negligently, recklessly, and/or intentionally" by failing "to properly train and supervise Defendants John Doe Police Officers 1 - 10 with regard to the proper use of force against members of the public." (Docket No. 8 at 5-6.)

As to Plaintiff's specific claims against Codispoti, who was police chief until January 1, 2017, and Beu, who succeeded Codispoti at that time, Plaintiff alleges: On April 17, 2016, Codispoti was "aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and indifference, including using excessive use of force against members of the public by the Vineland police," and that "[s]ince January 1, 2017, this unconstitutional behavior

10

and indifference has continued under" Beu; "Codispoti not only

directed, encouraged, tolerated or acquiesced to this behavior,

but was deliberately indifferent to the likelihood that his

staff, employees and/or police officers would use excessive

force against members of the public"; and the deliberate

indifference of Codispoti "to the need to supervise his staff,

employees and/or corrections officers was a proximate cause of

the constitutional violations suffered by the decedent."

(Docket No. 8 at 8.)

All of these allegations are simply conclusory restatements

of the legal elements of unconstitutional policy, custom, and

failure to train claims under Monell, without any facts to show

how the City of Vineland became aware of a pattern and culture

of unconstitutional behavior by Vineland officers, when and

under what circumstances such events occurred, how Vineland

police chiefs failed to properly train its officers, or show the

nature of the policy or custom that fostered the use of

excessive force by the officers.

Iqbal itself provides the precise explanation as to why

Plaintiff's claims are deficient, and this Court has set forth

the reasoning of Iqbal when dismissing similarly pled Monell

claims in another case.  See Zampetis v. City of Atlantic City,

2016 WL 5417195, at *6 (D.N.J. 2016).  In Zampetis, this Court

explained that in Iqbal, the complaint claimed that Attorney

General John Ashcroft and FBI Director Robert Mueller violated

Iqbal's equal protection rights by condoning and agreeing to

subject Iqbal to harsh conditions of confinement solely on

account of his race, religion and/or national origin.  The U.S.

Supreme Court held that the allegation that Ashcroft and Mueller

discriminated against him "on account of [his] religion, race,

and/or national origin and for no legitimate penological

interest" was a conclusory and formulaic recitation of the

elements of a constitutional discrimination claim, and could not

be assumed to be true. Zampetis v. City of Atlantic City, 2016

WL 5417195, at *6 (D.N.J. 2016) (citing Iqbal, 556 U.S. at 681).

The Supreme Court found that the factual allegation that

Ashcroft and Mueller adopted a policy of approving harsh

conditions of confinement for post-September 11 detainees until

the FBI cleared them did not plausibly suggest that Ashcroft and

Mueller purposefully discriminated against the detainees because

of their race, religion or national origin and, therefore, did

not state a claim for purposeful discrimination claim against

these high ranking defendants.  Id.

   As in Iqbal, and also in Zampetis, Plaintiff's conclusory

contention that an infirm policy, or custom, or training

practice by the City of Vineland, and the police chiefs'

knowledge of one or all of these infirmities, caused Bard's

shooting death is insufficient to properly plead a viable Monell

claim.   Plaintiff is required to provide facts – not simply

regurgitate all the legal bases for liability under <u>Monell</u> - to

support her contentions and adequately plead her claims against

the City and the police chiefs.   Because of Plaintiff's failure

to do so, Plaintiff's claims against the City of Vineland,

Codispoti, and Beu must be dismissed.[2]

The Court will, however, provide Plaintiff with thirty days

to file amended claims against the City and the police chiefs[3] if

---

[2] In her opposition brief, Plaintiff attempts to add more factual
support to her claims against the City and police chiefs.  That
is procedurally improper.  <u>See</u> <u>Com. of Pa. ex rel. Zimmerman v.</u>
<u>PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one
thing to set forth theories in a brief; it is quite another to
make proper allegations in a complaint."); <u>id.</u> (citations
omitted) "'[I]t is axiomatic that the complaint may not be
amended by the briefs in opposition to a motion to dismiss.'").
The Court takes no position at this time as to whether the
content of Plaintiff's brief, if added to her complaint, would
transform her civil rights claims against the City and the
police chiefs into viable ones.

[3] Plaintiff's claims against Codispoti and Beu in their official
capacities must be dismissed as redundant and should not be re-
pleaded.  <u>See</u> <u>Janowski v. City of North Wildwood</u>, --- F. Supp.
3d ---, 2017 WL 1821078, at *12 (D.N.J. May 5, 2017) (quoting
<u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) ("[A]n official-
capacity suit is, in all respects other than name, to be treated
as a suit against the entity. It is not a suit against the
official personally, for the real party in interest is the
entity."); <u>Baez v. Lancaster Cty.</u>, 487 F. App'x 30, 32 (3d Cir.
2012) (finding that where claims against an officer in his
official capacity are duplicative of claims against the
municipality, those claims are properly dismissed as
redundant)).

she wishes to do so, and can do so in compliance with Rule 8,

Twombly/Iqbal, and Rule 11.

### 2. Plaintiff's constitutional and NJCRA violation claims against the John Doe police officers

Plaintiff's claims against the John Doe police officers

consist of the allegation that after Bard and Bain allegedly

fled after robbing a person near Seventh and Cherry Streets in

Vineland, they were chased by the police, and one responding

officer shot at Bard four times, with two bullets striking him

in the groin and hip, which ultimately led to his death an hour

later.  Plaintiff also alleges that Bard was disabled and could

not have run away from police, and that Bard had two broken

wrists of unknown cause at the time of his death.  Based on

these allegations, Plaintiff alleges that the officers "violated

the Civil Rights of Richard Bard as guaranteed by the Eighth and

Fourteenth Amendments to be safe from injury, harm and excessive

force from the Vineland Police"; their actions proximately

caused Bard's death; and their actions were "intentional,

malicious, willful, wanton and/or in reckless disregard of

Richard Bard's federally protected rights, therefore entitling

Plaintiff to an award of punitive damages."  (Docket No. 8 at

7.)

Even though Plaintiff's claims against the police officers

are meager, and, indeed, Plaintiff has not even named the

14

officers involved in the incident,[4] Plaintiff's constitutional

and NJCRA violation claims against the officers may proceed past

Defendants' motion to dismiss.  Plaintiff claims that Bard was

shot and killed while purportedly fleeing the police even though

his physical condition from an accident would have precluded his

ability to run.  Plaintiff further claims that the use of such

force was excessive.  This allegation provides the officers with

---

[4] New Jersey Court Rule 4:26-4, which is applicable in federal
court, see DeRienzo v. Harvard Industries, Inc., 357 F.3d 348,
353 (3d Cir. 2004) (citing N.J.S.A. 2A:14-2 and N.J. Ct. R.
4:26-4), permits a plaintiff to amend his complaint to identify
the proper party as long as a John Doe fictitious designation
was included for that specific category of defendant.  See
Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 489 (D.N.J.
2002) (citing Mancuso v. Neckles, 747 A.2d 255, 261 n.1 (N.J.
2000) and discussing N.J. Ct. R. 4:26-4) ("[T]he fictitious
party rule permits a plaintiff to preserve a claim against as
yet unidentified potential defendants who may have contributed
to plaintiff's injuries.").  The Rule provides, in relevant
part, "In any action, irrespective of the amount in controversy,
other than an action governed by R. 4:4-5 (affecting specific
property or a res), if the defendant's true name is unknown to
the plaintiff, process may issue against the defendant under a
fictitious name, stating it to be fictitious and adding an
appropriate description sufficient for identification. Plaintiff
shall on motion, prior to judgment, amend the complaint to state
defendant's true name, such motion to be accompanied by an
affidavit stating the manner in which that information was
obtained . . . ."  The Rule also requires that the plaintiff
must have exercised due diligence to ascertain the defendant's
true name before and after filing the complaint.  DeRienzo, 357
F.3d at 353.  Plaintiff has not explained why she has not
discovered the names of the officers involved in the shooting of
her son, but Defendants do not challenge Plaintiff's invocation
of the Fictitious Party Rule.  Thus, the Court does not have a
basis at this time to question Plaintiff's continued use of the
Rule.

notice of the nature of Plaintiff's claims against them, and

accepting as true that using deadly force in that situation was

excessive, the facts alleged in the complaint are sufficient to

show that Plaintiff has a plausible claim for relief on his

civil rights claims against at least one officer.  Consequently,

Plaintiff's claims against the John Doe police officers may

proceed.[5]

### 3.    Plaintiff's Wrongful Death and Negligence claims

In addition to the Defendants' alleged civil rights

violations, Plaintiff asserts claims against them for wrongful

death[6] and negligence.  These claims fail as against the City of

Vineland, Codispoti, and Beu for the same reason as Plaintiff's

---

[5] The Court reminds Plaintiff that when she discovers the
identities of the officers involved and names them that her
allegations against those officers must comply with Rule 8 and
Twombly/Iqbal by providing sufficient facts to make out a
plausible civil rights claims against each named officer.

[6] Plaintiff does not specifically allege that Defendants have
violated the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1 to
-6, but the Act codified the common law of wrongful death
claims.  LaFage v. Jani, 766 A.2d 1066, 1077 (N.J. 2001) ("New
Jersey had a common law wrongful death cause of action before
our first statute was passed in 1848. . . . [O]ur Wrongful Death
Act is a codification of our common law.").  Therefore,
Plaintiff's wrongful death claim must arise under the New Jersey
Wrongful Death Act.  Under the Wrongful Death Act, the heirs of
a person who has died by virtue of "a wrongful act, neglect or
default" may assert a claim for their "pecuniary injuries."
N.J.S.A. 2A:31-1, -5.

civil rights claims against them – the dearth of any factual

support separate from the legal elements of those claims.

As for Plaintiff's wrongful death and negligence claims

against the John Doe police officers, Defendants argue that

those claims fail because Plaintiff does not allege that she

complied with the New Jersey Tort Claims Act.  Under the NJTCA,

a plaintiff bringing a tort claim against a public entity or

public employee must give the relevant public entity notice of

the claim within ninety days of the accrual of the cause of

action. N.J.S.A. 59:8-8.  A plaintiff who fails to do so is

"forever barred" from recovering against a public entity or

employee.  Id.

Plaintiff's complaint does not state that she complied with

the notice requirement of the NJTCA, but she attaches to her

opposition brief what she contends is her tort claim notice.

(Docket No. 16-1.)  In response, Defendants do not challenge

whether Plaintiff's notice is in compliance with the NJTCA, but

instead argue that she cannot amend her complaint through her

brief to establish that compliance.

Because the Court will permit Plaintiff to file an amended

complaint relating to her civil rights claims against the City

of Vineland, Codispoti, and Beu, she may also re-plead her

wrongful death and negligence claims, including pleading her

compliance with the NJTCA, so long as she complies with Rule 8,

Twombly/Iqbal, and Rule 11.

## CONCLUSION

For the reasons expressed above, all of Plaintiff's claims against the City of Vineland, Former Police Chief Timothy Codispoti, and Police Chief Rudy Beu will be dismissed, and Plaintiff's wrongful death and negligence claims against the John Doe police officers will also be dismissed. Plaintiff is afforded thirty days to file an amended complaint against any, some, or all of these Defendants if she can do so in compliance with Federal Civil Procedure Rules 8 and 11 and the standards set forth by Twombly and Iqbal. Plaintiff's civil rights violation claims against the John Doe police officer may proceed.

An appropriate Order will be entered.


Date:   October 19, 2017            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.