```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| THE ESTATE OF RICHARD BARD and DANA GERMAN-BUNTON, as administrator *ad-prosequendum* of THE ESTATE OF RICHARD BARD, | 1:17-cv-01452-NLH-AMD  **OPINION** |
| Plaintiffs, | |
| v. | |
| THE CITY OF VINELAND, CHIEF RUDY BEU, FORMER CHIEF TIMOTHY CODISPOTI, and JOHN DOE POLICE OFFICERS 1-10, | |
| Defendants. | |

**APPEARANCES**:

CONRAD J. BENEDETTO
MELISSA YVETTE HOFFMAN
LAW OFFICES OF CONRAD J. BENEDETTO
1233 HADDONFIELD-BERLIN ROAD
SUITE 1
VOORHEES, NJ 08043
     On behalf of Plaintiffs

A. MICHAEL BARKER
TODD J. GELFAND
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221
     On behalf of Defendants

**HILLMAN, District Judge**

This matter concerns claims by Plaintiff, Dana German-Bunton, the mother of Richard Bard, the decedent, arising out of the shooting death of Bard by Defendant City of Vineland

("City") police officers. Plaintiff claims: a) that the police officers violated Bard's right to be free from the use of excessive force; b) the City and the police chiefs maintained a policy or custom that fostered the police officers' use of excessive force; and c) the City and police chiefs failed to properly train their officer on the appropriate use of force, all in violation of the Fourth Amendment of the U.S. Constitution and New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c). Plaintiff has also lodged claims for wrongful death and negligence under state law against Defendants.[1]

Presently before the Court is the motion of the City of Vineland, its current police chief, Rudy Beu, and its former police chief, Timothy Codispoti, to dismiss Plaintiff's claims. This is Defendants' second motion to dismiss. Previously, the Court granted Defendants' first motion to dismiss because Plaintiff's complaint failed to plead facts with the level of specificity required by Federal Rule of Civil Procedure Rule 8. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (hereinafter "Twombly/Iqbal"). (Docket No. 18.) The Court found that Plaintiff's allegations were simply conclusory restatements of the legal elements of unconstitutional policy, custom, and failure to train claims

---

[1] Subject matter jurisdiction is founded on 28 U.S.C. §§ 1331, 1343 and 1367.

2

under Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978), without any facts to show how the City of Vineland became aware of a pattern and culture of unconstitutional behavior by Vineland officers, when and under what circumstances such events occurred, how Vineland police chiefs failed to properly train its officers, or the nature of the policy or custom that fostered the use of excessive force by the officers. (Id. at 11.) The lack of any factual support to Plaintiff's claims against the City and its police chiefs also resulted in the dismissal of Plaintiff's state law claims. (Id. at 16-17.)

The Court afforded Plaintiff thirty days to file an amended complaint against those Defendants if she could do so in compliance with Federal Civil Procedure Rules 8 and 11 and the standards set forth by Twombly and Iqbal. (Id. at 18.) The Court permitted Plaintiff's civil rights violation claims against the John Doe police officers to proceed. (Id.)

Plaintiff timely filed an amended complaint. (Docket No. 22.) Plaintiff's amended complaint still does not identify the John Doe police offices, and she reasserts all the claims against the Vineland, Beu, and Codispoti that the Court had dismissed. Shortly thereafter, Defendants moved to dismiss Plaintiff's claims against them, arguing that the minor additions to her allegations do not cure the deficiencies in her

3

pleading. Defendants also argue that Plaintiff's claims should be dismissed with prejudice because she has already been afforded two opportunities to state cognizable claims against them, and her continued failure to do so demonstrates that no valid claims against them exist.

In opposition, Plaintiff points to the two main additions to her complaint that she argues satisfy Rule 8 and Twombly/Iqbal. Plaintiff has added that Bard was targeted by the police for the robbery that was the basis for their encounter with him because he is African American, despite the fact that the robbery victim identified the suspect as being Puerto Rican. Plaintiff claims that the City of Vineland, through its police chiefs, maintained a policy of baselessly targeting African Americans in criminal investigations. Plaintiff also adds to her complaint that Defendants maintained a policy of allowing officers to use excessive force by having a "whatever means necessary" approach to stopping criminal suspects.

Plaintiff's additions to her complaint do not provide enough factual underpinning to rise above the level of simply pleading the legal bases for liability under Monell.[2] That the

---

[2] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4

officers pursued Bard, an African American, as the perpetrator of a robbery when the victim identified a person of Puerto Rican descent does not suggest, standing alone, a plausible claim that Vineland police chiefs deliberately fostered a policy of inappropriately targeting African Americans as a group. In the same vein, that the police officers shot Bard from behind while he was fleeing, and that such use of force constituted a "whatever means necessary" approach to apprehending him, does not imply that the Vineland police chiefs maintained an environment, through a custom, policy, or lack of training, of condoning the use of excessive force.

It is well established law that a policy or custom

---

conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

5

sufficient to maintain a § 1983 Monell claim ordinarily cannot be inferred from one single instance of misconduct. Delbridge v. Whitaker, 2010 WL 1904456, at *5 (D.N.J. 2010) (citing Losch v. Borough of Parkesburg, PA, 736 F.2d 903, 911 (3d Cir. 1984) ("A policy cannot ordinarily be inferred from a single instance of illegality such as a first arrest without probable cause.")); Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Indeed, the terms "policy" and "custom" themselves connote an ongoing practice or course of conduct that has inflicted harm on more than one occasion, and will continue to inflict harm if that practice or course of conduct is not curbed or corrected. See, e.g., Gallashaw v. City of Philadelphia, 774 F. Supp. 2d 713, 718 (E.D. Pa. 2011) (finding that the plaintiff's claim that a policy or custom causing constitutional rights violations can be inferred from a single incident fell short, and noting that the plaintiff herself referenced several cases requiring proof of "persistent," "widespread," or "repeated" constitutional violations before an inference of policy or

custom is appropriate).³

Moreover, a viable § 1983 claim must show a causal link between the alleged policy and custom and the alleged injury. Even where there is proof of the existence of an unlawful policy or custom, a plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id.

Plaintiff has not pleaded facts to suggest that a policy or custom of targeting African Americans or permitting "whatever it takes necessary" force caused the individual officers to pursue and shoot Bard. See Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (providing that liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom,

---

³ As the court in Delbridge noted, a single instance of misconduct can be used to infer a policy in limited circumstances, but such circumstances are not pleaded here. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (municipal liability may be imposed for a single decision by municipal policymakers such as a legislative body or individuals who create policy); Keenan v. City of Phila., 983 F.2d 459, 468 (3d Cir. 1992) (a single instance of misconduct by a policymaking official can be used to infer a policy).

7

while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees"); Benhaim v. Borough of Highland Park, 2015 WL 105794, at *7 (D.N.J. 2015) (noting that liability does not "arise on the tautological grounds that the injury in question would not have occurred if officers had been trained to avoid that particular injury; such a claim 'could be made about almost any encounter resulting in injury.'" (quoting Canton, 489 U.S. at 391)); Harley v. City of New Jersey City, 2017 WL 2779466, at *8 n.9 (D.N.J. 2017) ("Regardless of the amount of training provided or the number of policies implemented, a rogue employee can always type something inappropriate on an employer's computer. If this occurs, it does not mean (nor can it be inferred) that the employer has a formal policy condoning such behavior."); Culver v. Wardlow, 2012 WL 686016, at *1 (D.N.J. 2012) (granting the municipality's motion to dismiss the plaintiff's Monell claims where the city council member made four telephone calls to the New Jersey State Police in which she falsely reported that a black male with dreadlocks – the plaintiff - was causing a disturbance at the borough hall on election day and not informing the police that the plaintiff was a candidate permitted to be there, finding that the council member made no official policy, "but rather made a rogue decision when she allegedly called the police to subvert a political adversary," and rejecting the plaintiff's

argument that the council member's status automatically converted her actions into a municipal policy because her actions did not constitute "a final proclamation, policy or edict," and that the plaintiff did not allege any widespread custom of incumbents lying to the police to subvert political adversaries, but rather, the city council member specifically acted to prevent the plaintiff from interacting with voters on election day); cf. Merman v. City of Camden, 824 F. Supp. 2d 581, 593 (D.N.J. 2010) (permitting a plaintiff's Monell claim to proceed to a jury because, "[t]aken as a whole, the civilian complaints and Internal Affairs' investigations and resolutions show that plaintiff's allegations are consistent with prior allegations and that when investigating civilian complaints, Internal Affairs employs processes and reasoning that may, in the eyes of a reasonable fact-finder, insulate officers from liability"); Castellani v. City of Atlantic City, 2017 WL 3112820, at *20 (D.N.J. 2017) (denying summary judgment on the plaintiff's Monell claim because plaintiff alleged, and ultimately presented evidence, that Atlantic City mislabeled civilian complaints alleging criminal conduct which provided a "plausible nexus" or "affirmative link" between the City's custom and the plaintiff's injuries, "because if officers are consistently reprimanded for minor administrative violations (or not reprimanded at all) instead of disciplined for excessive

9

force or other potential criminal violations, then a heightened inclination of police officers to use excessive force would be a highly predictable consequence of the City's inaction" (citations and quotations omitted)).

In short, to present a valid Monell claim, "[a] plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." Losch, 736 F.2d at 910. Plaintiff's amended complaint fails to plead facts to suggest that the police chiefs, as policymakers for the City of Vineland, made a deliberate choice to promulgate, implement, or maintain the alleged policies and customs and training failures.[4] Plaintiff's amended complaint also fails to provide facts to suggest that any such policies, customs, or training failures proximately caused the officers' actions during the incident.

---

[4] As pointed out by Defendants, Plaintiff does not distinguish between the two police chiefs and allege each individual defendant's actions relative to the alleged unconstitutional policies and customs. Moreover, Defendant Beu did not become the Vineland Police Chief until seven months after the April 17, 2016 incident. The failure to plead facts specific to each defendant is also fatal to Plaintiff's claims against the police chief defendants. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that to properly plead a claim against an individual government defendant in a civil rights action, the complaint must indicate how that defendant had personal involvement in the alleged wrongdoing, which can be shown through allegations of personal direction or of actual knowledge and acquiescence).

Consequently, Plaintiff's claims against the City of Vineland, its current police chief, Rudy Beu, its former police chief, Timothy Codispoti, must be dismissed.

With that decision, the Court must address two other issues. First, the Court will dismiss Plaintiff's claims against Vineland, Beu, and Codispoti without prejudice.[5] Even though Defendants ask that the claims be dismissed with prejudice, should the discovery process for Plaintiff's claims against the police officer defendants reveal facts to support her municipal liability claims, Plaintiff should be permitted to seek leave of Court to amend her complaint to reassert such claims.

This raises the next issue, which is the John Doe status of the defendant police officers. In the Court's prior Opinion, the Court noted:

> New Jersey Court Rule 4:26-4, which is applicable in federal court, see DeRienzo v. Harvard Industries, Inc., 357 F.3d 348, 353 (3d Cir. 2004) (citing N.J.S.A. 2A:14-2 and N.J. Ct. R. 4:26-4), permits a plaintiff to amend his complaint to identify the proper party as long as a John Doe fictitious designation was included for that specific category of defendant. See Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 489 (D.N.J. 2002) (citing Mancuso v. Neckles, 747 A.2d 255, 261 n.1 (N.J. 2000) and discussing

---

[5] In the Court's prior Opinion, the Court ordered that Plaintiff's claims against Codispoti and Beu in their official capacities must be dismissed as redundant of Plaintiff's claims against the City of Vineland, and should not be re-pleaded. (Docket No. 18 at 13 n.3.) To the extent that such claims remain in Plaintiff's amended complaint, they are dismissed with prejudice.

>    N.J. Ct. R. 4:26-4) ("[T]he fictitious party rule permits a
>    plaintiff to preserve a claim against as yet unidentified
>    potential defendants who may have contributed to
>    plaintiff's injuries.").  The Rule provides, in relevant
>    part, "In any action, irrespective of the amount in
>    controversy, other than an action governed by R. 4:4–5
>    (affecting specific property or a res), if the defendant's
>    true name is unknown to the plaintiff, process may issue
>    against the defendant under a fictitious name, stating it
>    to be fictitious and adding an appropriate description
>    sufficient for identification.  Plaintiff shall on motion,
>    prior to judgment, amend the complaint to state defendant's
>    true name, such motion to be accompanied by an affidavit
>    stating the manner in which that information was obtained .
>    . . ."  The Rule also requires that the plaintiff must have
>    exercised due diligence to ascertain the defendant's true
>    name before and after filing the complaint. DeRienzo, 357
>    F.3d at 353.

(Docket No. 18 at 15 n. 4.)

The Court further noted that Plaintiff had not explained why she has not discovered the names of the officers involved in the shooting of her son, but that Defendants did not challenge Plaintiff's invocation of the Fictitious Party Rule.  The Court therefore did not have a basis at that time to question Plaintiff's continued use of the Rule.  (Id.)  The Court reminded Plaintiff, however, that when she discoverd the identities of the officers involved and names them in her complaint, her allegations against those officers must comply with Rule 8 and Twombly/Iqbal by providing sufficient facts to make out a plausible civil rights claims against each named officer.  (Id. at 16 n.5.)

It remains a mystery to the Court why the identities of the

officers involved in the shooting death of Bard have not been revealed. Plaintiff's original complaint was filed on March 2, 2017, and even though the formal discovery process has not yet begun because of the two motions to dismiss that were filed, it is unclear why other means are not available to Plaintiff to determine the officers' identities.

Plaintiff's case may proceed against the John Doe officers involved in Bard's death, but by local rule the matter will not be set for a Rule 16 initial conference because the unidentified John Doe officers have not filed an Answer.[6] The Court will therefore direct Plaintiff to file a letter within 15 days of the date of this Opinion explaining why the John Doe officers have not yet been identified and added to the complaint, so that the Court may determine how this matter may move forward.

An appropriate Order will be entered.


Date:   July 20, 2018                s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

[6] Local Civil Rule 16.1(a)(1) provides, "Conferences pursuant to Fed. R. Civ. P. 16 shall be conducted, in the first instance, by the Magistrate Judge, unless the Judge otherwise directs. The initial conference shall be scheduled within 60 days of filing of an initial answer . . . ."