```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| THE ESTATE OF RICHARD BARD and DANA GERMAN-BUNTON, as administrator *ad-prosequendum* of THE ESTATE OF RICHARD BARD, | 1:17-cv-01452-NLH-AMD <br><br> **OPINION** |
| Plaintiffs, | |
| v. | |
| THE CITY OF VINELAND, CHIEF RUDY BEU, FORMER CHIEF TIMOTHY CODISPOTI, and JOHN DOE POLICE OFFICERS 1-10, | |
| Defendants. | |

**APPEARANCES**:

CONRAD J. BENEDETTO
LAW OFFICES OF CONRAD J. BENEDETTO
1233 HADDONFIELD-BERLIN ROAD
SUITE 1
VOORHEES, NJ 08043

    *On behalf of Plaintiffs*

A. MICHAEL BARKER
TODD J. GELFAND
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221

    *On behalf of Defendants*

**HILLMAN, District Judge**

    This matter concerns claims by Plaintiff, Dana German-Bunton, the mother of Richard Bard, the decedent, arising out of

the shooting death of Bard by Defendant City of Vineland ("City") police officers. In her original and amended complaint,[1] Plaintiff claimed: a) that the police officers – named as John Does - violated Bard's right to be free from the use of excessive force; b) the City and the police chiefs maintained a policy or custom that fostered the police officers' use of excessive force; and c) the City and police chiefs failed to properly train their officers on the appropriate use of force, all in violation of the Fourth Amendment of the U.S. Constitution and New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c).

On October 19, 2017, the Court granted the motion of the City of Vineland, its current police chief, Rudy Beu, and its former police chief, Timothy Codispoti, to dismiss Plaintiff's claims. (Docket No. 18.) The Court afforded Plaintiff leave to file a second amended complaint against those Defendants if she could do so in compliance with Federal Civil Procedure Rules 8 and 11 and the standards set forth by Twombly and Iqbal.[2] (Id.) Plaintiff filed a second amended complaint, and Defendants again moved to dismiss Plaintiff's claims.

---

[1] Plaintiff filed her original complaint on March 2, 2017. She filed an amended complaint on March 21, 2017.

[2] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

2

On July 20, 2018, the Court granted Defendants' motion to dismiss Plaintiff's second amended complaint. (Docket No. 27.) The Court held that Plaintiff's second amended complaint failed to plead facts to suggest that the police chiefs, as policymakers for the City of Vineland, made a deliberate choice to promulgate, implement, or maintain the alleged policies and customs and training failures. The Court further found that Plaintiff's second amended complaint also failed to provide facts to suggest that any such policies, customs, or training failures proximately caused the officers' actions during the incident. Thus, the Court again dismissed Plaintiff's claims brought under <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978) against the City and the police chiefs. (<u>Id.</u>)

From the time Plaintiff filed her original complaint through the Court's decision dismissing, for the second time, Plaintiff's <u>Monell</u> claims against the City and the police chiefs, Plaintiff never sought to substitute the John Doe officers with their real identities. In the July 20, 2018 Opinion, the Court stated, "It remains a mystery to the Court why the identities of the officers involved in the shooting death of Bard have not been revealed. Plaintiff's original complaint was filed on March 2, 2017, and even though the formal discovery process has not yet begun because of the two motions

3

to dismiss that were filed, it is unclear why other means are not available to Plaintiff to determine the officers' identities." (Docket No. 27 at 12-13.) The Court directed Plaintiff to file a letter within 15 days explaining why the John Doe officers had not yet been identified and added to the complaint, so that the Court could determine how the matter would move forward. (Id. at 13.)

On August 23, 2018, Plaintiff responded that she had identified the officers and she asked for forty-five days to file an amended complaint. (Docket No. 29.) In consideration of Plaintiff's letter and the Court's prior Opinions, the Court directed Plaintiff to file a motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(c) and N.J. Ct. R. 4:26-4 no later than September 21, 2018. (Docket No. 30.) The Court had previously explained that N.J. Ct. R. 4:26-4 – the "fictitious party rule" applicable in federal court - permits a plaintiff to preserve a claim against a yet unidentified potential defendant who may have contributed to the plaintiff's injuries, so long as the plaintiff, via a motion prior to judgment, seeks to amend the complaint to state the defendant's true name, and the motion is accompanied by an affidavit explaining the manner in which that information was obtained, along with evidence of the plaintiff's due diligence. (Docket No. 18 at 15 n.4, citing DeRienzo v. Harvard Industries, Inc.,

4

357 F.3d 348, 353 (3d Cir. 2004) (citing N.J.S.A. 2A:14-2 and N.J. Ct. R. 4:26-4)).)

Plaintiff filed a motion for leave to amend and attached a proposed third amended complaint, which is currently pending. (Docket No. 31.) The motion does not address N.J. Ct. R. 4:26-4, and it does not explain why Plaintiff had not named the officers previously. The proposed third amended complaint substitutes the "John Does" for the real identities of the officers - Christopher Puglisi and Gerard Moughan. However, the proposed third amended complaint also contains all the same claims the Court previously dismissed twice, except for the elimination of any reference to former police chief Codispoti. (Docket No. 31-3.)

Defendants have opposed the filing of the proposed third amended complaint. (Docket No. 35.) First, Defendants point out that none of the claims against the City or the police chiefs has changed from the prior dismissed complaints, and those claims should not be allowed to proceed. On that point, the Court agrees. Regurgitated claims that have already been dismissed twice and have no new basis for assertion cannot proceed, for all the same reasons the Court expressed in the prior two opinions.[3]

---

[3] The second time the Court dismissed the claims against the City and the police chiefs, it was without prejudice, instead of with

Second, Defendants argue that Plaintiff has asserted claims against the two police officers, Christopher Puglisi and Gerard Moughan, for excessive force,[4] but because Plaintiff's third amended complaint fails to aver any facts against Moughan, the excessive force claim against him must be dismissed.[5] Again, the

---

prejudice as argued by Defendants, in the event that the discovery process for Plaintiff's claims against the police officer defendants revealed facts to support her municipal liability claims. Plaintiff still did not have the benefit of discovery when she submitted her proposed third amended complaint. Thus, the Court will strike Plaintiff's claims against the City and Beu, but not foreclose a future application by Plaintiff pursuant to Fed. R. Civ. P. 15 to reassert her Monell claims, if she can do so consistent with Fed. R. Civ. P. 8 and 11.

[4] Plaintiff has also asserted claims for violations of the New Jersey Civil Rights Act, which was modeled after 42 U.S.C. § 1983 and is interpreted analogously to § 1983. See Norman v. Haddon Township, 2017 WL 2812876, at *4 (D.N.J. 2017). Defendants have moved to dismiss Plaintiff's NJCRA and § 1983 claims against Puglisi and Moughan in their official capacities as duplicative of Plaintiff's claims against the City, which claims have been dismissed. Defendants are correct and Plaintiff's official capacity claims must be dismissed. Janowski v. City of North Wildwood, 259 F. Supp. 3d 113, 131 (D.N.J. 2017). Plaintiff has also asserted state law claims for wrongful death, assault, and battery against Puglisi. Defendants have not moved to dismiss those claims.

[5] Defendants do not argue that Plaintiff should be precluded from the benefit of the fictitious party rule such that her third amended complaint against the now-identified officers, filed on September 21, 2018, should not relate back to the date of Plaintiff's original complaint, filed on March 2, 2017, for the April 17, 2016 shooting of Bard. Thus, the Court accepts that Plaintiff's substitution of Puglisi for one of the John Doe defendants is timely. See, e.g., Scott v. New Jersey State Police, 2015 WL 4393474, at *2 (D.N.J. 2015) (citing Claypotch v. Heller, Inc., 823 A.2d 844 (N.J. Sup. Ct. App. Div. 2003)) (explaining that a § 1983 claim for excessive force has a two-

Court agrees.

The factual allegations in Plaintiff's proposed third amended complaint are as follows:

FACTS COMMON TO ALL CLAIMS FOR RELIEF

23. At the time of his death on April 17, 2016, Richard Bard was thirty-one (31) years old.

24. Richard Bard had been involved in a motor vehicle accident on January 13, 2013, wherein he sustained serious injuries to his legs. Bard's injuries included an open fracture to his femur, a closed fracture to his femur, rib contusions, a pulmonary contusion and pneumothorax; for which the decedent had pending surgeries.

25. Based on his existing injuries, it was not possible for Richard Bard to walk briskly, much less run, from the Defendant Officers.

26. On April 16, 2016, decedent, Richard Bard, and his girlfriend, Ebony Bonner, attended a birthday party at a friend's home located at the Walnut Villa Complex on Florence Avenue in Vineland, New Jersey.

27. At around 11:30 p.m., Richard Bard and an individual named Jonathan Bain agreed to leave the party and walk together to get cigarettes from another resident at the Walnut Villa Complex.

28. It is alleged by the Vineland police that around 1:00 a.m. on April 17, 2016, Richard Bard and Jonathon Bain were involved in a robbery of an individual near Seventh and Cherry Streets in Vineland.

29. It is further alleged that Richard Bard and Jonathon Bain fled on foot and were chased by the police.

---

year statute of limitations, and that the fictitious party rule provides that a plaintiff may identify a defendant by a fictitious name before the statute of limitations expires, and the plaintiff may then substitute the fictitious name with the defendant's true name, with the amended complaint relating back to the date of original complaint even if the limitations period has run).

30. A responding officer, Christopher Puglisi, shot at Richard Bard four times before Bard fell to the ground near East Avenue and Almond Street in Vineland.

31. After the shooting, EMS were called. When EMS arrived, Richard Bard was found unconscious lying on the side of road in a pool of blood. He had sustained two gunshot wounds, including one gunshot wound to his groin and one gunshot wound to his hip. He suffered substantial blood loss at the scene.

32. Richard Bard was pronounced dead at Inspira Hospital by Dr. William Martin at 2:05 a.m., on April 17, 2016.

34. [sic] After the shooting, family members of Richard Bard were advised that he sustained two broken wrists. No explanation was provided for how his wrists had been broken.

(Docket No. 31-3 at 3-4.)

The only claim advanced against Moughan is asserted collectively with Puglisi for excessive force: "Defendants used excessive force thereby violating Plaintiffs' rights under the laws of the Constitution of the United States, in particular the 4th and 14th Amendments and his rights under the Constitution laws of New Jersey. In doing so, Defendants willfully and maliciously caused the death of Richard Bard. The actions committed by Defendants constitute intentional misconduct, excessive use of force and deliberate indifference to Plaintiffs' constitutional rights which caused Richard Bard's death, in violation of Plaintiffs' rights as previously set forth in the above paragraphs." (Docket No. 31-2 at 5-6.)

The Court surmises that by Plaintiff substituting a John Doe Officer defendant with Moughan, Moughan must have been present or involved in the Bard shooting in some capacity. That the Court must guess as to Moughan's involvement is fatal to Plaintiff's claims against him.

It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).[6]

---

[6] Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments

9

Here, there are literally no facts in Plaintiff's proposed third amended complaint regarding Moughan that the Court can separate from the legal claim that Moughan committed excessive force against Bard. As the Supreme Court instructed, this formulaic recitation of the elements of a cause of action without any facts "'will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Consequently, the Court will grant Plaintiff's motion for leave to file a third amended complaint, but only for Plaintiff's claims asserted against City of Vineland Police Officer Christopher Puglisi in his individual capacity. All other claims shall be stricken from the proposed amended complaint. Because the third amended complaint supersedes the prior versions in providing the blueprint for the future course of a lawsuit, Snyder v. Pascack Valley Hospital, 303 F.3d 271,

---

under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Assessing a proposed amended complaint for futility is the same as applying the Rule 12(b)(6) standard. Brookman v. Township of Hillside, 2018 WL 4350278, at *2 (D.N.J. Sept. 12, 2018) (citing In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'")).

276 (3d Cir. 2002), Plaintiff is directed to file on the docket a third amended complaint which complies with the rulings in this Opinion.[7]  After the filing of a third amended complaint, the parties may proceed to discovery under the direction of the assigned magistrate judge.

An appropriate Order will be entered.


Date:   January 4, 2019            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

[7] In light of past failures, Plaintiff is reminded that if the third amended complaint is not consistent with the law of the case as set forth in this and prior opinions the Court will consider appropriate sanctions.